UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KENNY EARL PERDUE

                       **Plaintiff,**

            **-v-**                                                    03-CV-770Sr

**C.O. DREYER, C.O. SHAFFER,
SGT. POLLOCK, C.O. ANDREWS and
C.O. Vargara,**

                       **Defendants**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. ##18 & 24.

Plaintiff commenced this action, *pro se*, pursuant to 42 U.S.C. §1983, alleging that the defendants, corrections officers at the Groveland Correctional Facility ("Groveland"), were deliberately indifferent, in violation of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution, to his medical need for a bottom bunk. Dkt. #1. As a result of this deliberate indifference, plaintiff alleges that he fell off the top bunk while suffering a seizure and sustained cervical injuries. Dkt. #1.

Currently before the Court is defendants' motion for summary judgment. Dkt. #27. For the following reasons, defendants' motion is denied.

**BACKGROUND**

Groveland's Dormitory Unit Procedures provide that

> Movement from the top bunk will be done daily as needed if openings allow. Inmates will be moved in the following order: top bunk to bottom bunk, bottom bunk to single cube, single cube to side room only with the Sergeant's approval. Unsatisfactory disciplinary record and any documented unacceptable facility or program adjustment may affect housing placement. Housing unit and cube assignment are based upon operational needs. Medical problems may be taken into consideration for movement. Each dorm is considered a separate entity. Inmates that are moved to another dorm are to start over on a top bunk unless Sergeant approves a different bed. Dorm officers will keep records of the date inmates are moved into a dorm for longevity purposes. Failure to accept cube assignment, i.e., move from bottom bunk to single cube, will disqualify inmate from future moves in that dorm.

Dkt. #21, pp.13-14.

On January 1, 2003, plaintiff returned from a 30-day stay in the Special Housing Unit and was placed in C-3-68T, which is a top bunk. Dkt. #32, ¶ 4; Dkt. #41, ¶ 4. C.O. Dreyer[1] declares that plaintiff made no objection to this assignment. Dkt. #32, ¶ 4. C.O. Dreyer also declares that he had no recollection of plaintiff presenting him with a medical permit for a bottom bunk, but would have referred plaintiff to the acting sergeant or movement and control officer if plaintiff had presented such a permit

---

[1] C.O. Dreyer's name is spelled a number of different ways in the record before the Court but will be spelled in accordance with C.O. Dreyer's affidavit for consistency within this Decision and Order.

because he had no authority to determine where plaintiff was assigned.  Dkt. #32, ¶ 5.  Plaintiff affirms that he showed C.O. Dreyer his medical permit and informed him that he could not be in a top bunk because of his seizure disorder, but was ordered into the cell.  Dkt. #45, ¶¶ 4-5.

A Permit from the Groveland Health Services Unit ("medical permit"), dated January 8, 2003, indicates that plaintiff has permission to receive a lower bunk/single bed permit immediately.  Dkt. #46-3, p.3.  A medical permit dated January 10, 2003, indicates that plaintiff has permission to receive a lower bunk/single bed permit immediately and permanently.  Dkt. #46-3, p.4.

On January 12, 2003, plaintiff's ambulatory health record indicates that a health care provider

> called C.O. Dreyer to inform him Inmate states not been moved to bottom bunk and feels like a seizure is coming on. Inform C.O. of this and requested him to be moved.

Dkt. #46-4, p.3.

At approximately 2:00 a.m. on January 14, 2003, plaintiff's ambulatory health record indicates that a health care provider was

> called to dorm – seizing – seen on floor – lying on back. Complains of neck pain and lower back pain . . . Moved to infirmary.

Dkt. #46-4, p.4.  Plaintiff was moved to a single cell at approximately 7:30 a.m. on January 14, 2003.  Dkt. #32, ¶ 5.

On January 16, 2003, plaintiff filed the following grievance:

> On 1/14 approximately 3:00 a.m. I suffered a seizure in my sleep resulting in my falling off the top bunk, hurting my neck and back. Prior to this incident, I complained several times about my disability because the facility placed me in a top bunk – when I even displayed my bottom bunk medical permit to no avail.

Dkt. #46-2, p.8. The IGRC's investigation revealed "bottom bunk permits dated 9/00, 4/01 and most recently immediate placement directions by a Nurse on 1/8 and a Dr. on 1/10/03." Dkt. #21, p.10.

An investigation by C.O. Watson further revealed that C.O. Vergara[2]

> stated on the date Grievant received the permit, he offered Grievant placement in a bottom bunk in a different dorm. He placed the [onus] on Grievant to make a choice. He refused. On 1-10 Grievant approached this writer at about 2:00 pm. I contacted movement who provided the same alternative. Grievant declined. I directed him to the Sergeant that evening and apprised the Sergeant on my way out of the situation. The Sergeant advised Grievant did not approach him that evening. Sergeant Graves (7-3) was contacted and advised that Grievant never approached him with the issue. He explained that all beds (lower) have individuals with medical permits. It is standard operating procedure that inmates in that dorm who are on a top bunk seldom receive a lower bunk due to the medical demands of others in this medically unassigned dorm. He indicated that consideration may have to be provided to directing/ordering the inmate to a bottom bunk in [a different] dorm if none available.
>
> Follow up: C.O. Dreyer was contacted and advised that he also indicated to Grievant a bottom bunk was available in an alternate dorm to which he declined movement. He was provided [with] a bottom bunk upon getting out of hospital

---

[2] C.O. Vergara's name is spelled a number of different ways in the record before the Court but will be spelled in accordance with C.O. Vergara's affidavit for consistency within this Decision and Order.

>because there was an opening in C-3. Otherwise, he would
>have been placed in an alternate dorm.

Dkt. #21, pp.10-11.

The IGRC denied plaintiff's grievance and the Superintendent agreed, advising that

>On at least 2 occasions Grievant was offered a bottom bunk,
>however, declined. The first was on the date he obtained
>the permit and the second was on 1-10-03 by the Inmate
>Grievance Program Supervisor, Ms. Watson. His medical
>permit was not ignored as alleged.

Dkt. #21, p.8.

In his appeal to the Central Office Review Committee ("CORC"), plaintiff stated:

>The Superintendent's assertion that I was offered a bottom
>bunk on 1-8-03 is completely fictitious. I was not offered a
>lower bunk until after Doctor Bronos had called Officer
>Dreyer and told him that I needed a bottom bunk due to me
>having seizures and that I need one immediately. After
>almost a week on the top bunk and of my going back to sick
>call and receiving even more permits for a bottom bunk due
>to my medical condition, all the permits were ignored by the
>security staff. I talked to each day officer that worked during
>the week and to two different Sergeants. While trying to file
>this grievance Ms. Watson did call somebody who said that
>the only place I could get a bottom bunk was down at the
>bottom of the hill in Dorm L-3. I told her with my medical I
>couldn't walk the hill all the time especially going back and
>forth to the mess hall where I cannot stop and take breaks
>on the way, they make you keep walking no matter what is
>wrong with you. After that I informed her that if that was the
>only place I could get a bottom bunk I would move down
>there until something became available in the medical dorm
>C-3, she told me she would check into it further and let me
>know what was going on, Before she could get back to me I

> had a seizure during the middle of that night. It should be
> noted that before I got back to the dorm from the hospital
> after my seizure, they had moved all of my property to a
> single cube.

Dkt. #21, p.8.

> On April 2, 2003, CORC responded
>
> that the grievant was offered bottom bunks on two
> occasions, but refused. CORC also asserts that the grievant
> should not have been offered an option to accept or reject
> his housing location. Subsequently, the grievant has been
> assigned to a medically prescribed bottom bunk. No malice
> is noted by staff, and appropriate administrative action will
> be taken.

Dkt. #46-2, p.8. CORC forwarded a copy of its decision to Groveland's Superintendent and by memorandum dated April 21, 2003, the Deputy Superintendent for Administrative Services directed "that any moves relative to medical necessity are to be made without option on the part of the inmate." Dkt. #21, p.7.

In support of the motion for summary judgment, C.O. Vergara, C.O. Dreyer, C.O. Shaffer and C.O. Andrews declare that they had no authority to move plaintiff to a lower bunk and would have referred plaintiff to the acting sergeant or movement and control officer had plaintiff presented him with a medical permit. Dkt. #30, ¶ 4; Dkt. #32, ¶ 5; Dkt. #33, ¶ 4; Dkt. #34, ¶ 5.

C.O. Hoffman declares that he was the movement and control officer at Groveland in January of 2003 and that the policy provided that

> when inmates had a permit from the medical department demonstrating a need for a bottom bunk, the matter was referred to me and it would be my responsibility to find an available lower bunk within the facility.  If the medical permit required an immediate placement, the inmate would be offered a lower bunk somewhere in the facility but not necessarily in the same housing unit.  If the inmate refused the lower bunk, he would have to wait for the next available bunk in his housing unit.

Dkt. #31, ¶ 4.  C.O. Hoffman declares that plaintiff

> was referred to me sometime in January of 2003 and he was offered a lower bunk in dorm L-3 due to the fact that there was no available lower bunk in his housing unit, C-3.  This situation was not unusual since the C-3 dorm was a medical unit whereby many, if not all, of the inmates in the lower bunks had medical permits for such bunks.

Dkt. #31, ¶ 5.  C.O. Hoffman declares that "plaintiff refused the bottom bunk and as such, he was required per policy to wait for the next available lower bunk in the C-3 dorm."  Dkt. #31, ¶ 6.

> Sergeant Pollock confirms C.O. Hoffman's recitation of the policy in place at the time of plaintiff's complaint and notes that the policy

> was changed since the incident involving [plaintiff].  As the policy now stands, if an inmate presents a medical permit for an immediate bottom bunk, he is assigned one and has no choice in the matter.  He must move to the lower bunk assignment.

Dkt. #35, ¶ 7.  Sergeant Pollock declares that he had no authority to reassign plaintiff's bunk and that such authority was vested solely in the movement and control officer.  Dkt. #35, ¶ 10.

Plaintiff affirms that each of the corrections officers named as defendants in this action were aware of his medical history of seizures and his medical permit for a lower bunk but failed to take action to ensure his placement in a lower bunk either by making the decision to move him or by summoning someone with that authority.  Dkt. #40, ¶ 3; Dkt. #41, ¶¶ 4-5; Dkt. #42, ¶ 4; Dkt. #44, ¶ 4; Dkt. #45, ¶ 4.

## ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982.   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


**Deliberate Indifference to Serious Medical Needs**

In *Estelle v. Gamble*, the Supreme Court of the United States determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the United States Constitution.  429 U.S. 97, 104 (1976).  To establish such a claim, the prisoner must demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).


In assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment

upon an individual's daily activities; and the severity and persistence of pain. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id.*

With respect to the defendant's state of mind, it is clear that "a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathway*, 37 F.3d at 66, *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66, *citing Farmer*, 511 U.S. at 835. Accordingly,

> It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.

*Chance*, 143 F.3d at 703.

In the instant case, there is no dispute that plaintiff had been issued a permanent medical permit for a lower bunk prior to his transfer to the medical unit on January 1, 2003. Dkt. #21, p.10. Moreover, there is no dispute that plaintiff had been issued additional medical permits for an immediate placement in a lower bunk on

-10-

January 8, 2003 and January 10, 2003.  Dkt. #21, p.10; Dkt. #46-3, pp.3-4.  Plaintiff affirms that he informed each of the corrections officers named as defendants in this action of his medical history of seizures and showed them his medical permit for a lower bunk.  Dkt. #40, ¶ 3; Dkt. #41, ¶¶ 4-5; Dkt. #42, ¶ 4; Dkt. #44, ¶ 4; Dkt. #45, ¶ 4.  In addition, plaintiff's medical record indicates that his health care provider informed C.O. Dreyer that plaintiff was in danger of suffering a seizure and "requested him to be moved."  Dkt. #46-4, p.3.  This evidence is sufficient to create a material question of fact as to defendants' deliberate indifference to plaintiff's serious medical needs.

Defendants cannot use plaintiff's reluctance to leave the medical dormitory as an affirmative defense to their failure to follow medical directions and place plaintiff in a lower bunk.  Accepting plaintiff's allegations as true for the purposes of this motion, defendants were aware of the potential for plaintiff to be injured by a fall from his upper bunk while suffering a seizure but failed to take action to prevent such an occurrence.  As a result, defendants' motion for summary judgment is denied.

SO ORDERED.

Dated:     Buffalo, New York
           November 5, 2008

  s/ H. Kenneth Schroeder, Jr.  
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge